UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ASHOK CHAUHAN,

                    Plaintiff,

       -against-

MM HOTEL MANAGEMENT LLC, d/b/a
GARDEN CITY HOTEL,
ANN BONNET, individually and in her official
capacity,
and
ATEF HAGGAG, individually and in his
official capacity,

                 Defendants.
--------------------------------------------------------X

Civil Case No: 7:18-cv-6488

Plaintiff Demands a
Trial by Jury

**COMPLAINT**

Plaintiff, ASKHOK CHAUHAN (hereinafter referred to as "Plaintiff" or "CHAUHAN"), by and through his attorneys, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendant MM HOTEL MANAGEMENT, LLC (hereinafter referred to as "MM HOTEL"), Defendant ANN BONNET (hereinafter referred to as "BONNET"), and Defendant HATEF HAGGAG (hereinafter referred to as "HAGGAG"), (hereinafter collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1. This action arises out of the unlawful religious discrimination, race discrimination, national origin discrimination disability discrimination, hostile work environment, and retaliation of Defendants MM HOTEL, BONNET, and HAGGAG against Plaintiff CHAUHAN.

2. Plaintiff HAGGAG complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), the Family and Medical Leave Act of 1993 ("FMLA") as amended, the Americans with Disabilities Act of 1990 ("ADA") as amended, and the laws of the State of New York, based upon the

1

supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, religious discrimination, race discrimination, national origin discrimination, disability discrimination, FMLA interference, hostile work environment and retaliation by Defendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, the FMLA, and the ADA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5. On or around March 22, 2017, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

6. On or around April 9, 2018, Plaintiff submitted an amended Charge with the EEOC.

7. On or around April 20, 2018, Plaintiff received a Right to Sue Letter from the EEOC.

8. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

9. Venue is proper in that the events arose in Westchester County within the Southern District of New York.

## PARTIES

10. Plaintiff CHAUHAN is an individual man who is a resident of the State of New York, County of Westchester.

11. At all times material, Defendant MM HOTEL is a domestic limited liability corporation duly

existing by the virtue and laws of the State of New York that does business in the State of New York.

12. At all times material, Defendant BONNET is an individual woman who is a resident of the State of New York, County of Nassau.

13. At all times material, Defendant HAGGAG is an individual man who is a resident of the State of New York, County of Nassau.

14. At all times material, Defendants own and operate a hotel in the State of New, County of Nassau.

<u>**MATERIAL FACTS**</u>

15. Plaintiff CHAUHAN is an individual, Indian man who practices Hinduism as his religion and suffers from diabetes.

16. At all times material, Defendant MM HOTEL owns and operates a hotel in the State of New York, County of Nassau.

17. On or about April 5, 2000, Defendants hired Plaintiff to work as a banquet server in its hospitality and events department.

18. At all times material, Plaintiff worked at Defendant MM HOTEL's 45 7th Street Garden City, NY 11530 location.

19. As a banquet server, Plaintiff's duties involved assisting in the setup and breakdown of major events such as wedding receptions, business conferences, organization parties, and more. Plaintiff's duties also involved serving the guests food and drinks at such events.

20. At all times material, Plaintiff's income as a banquet server heavily relied upon the tips he received at these events.

21. At all times material, it was well known that certain tables, returning events, and frequent

customers tipped banquet servers very well.

22. At all times material, these events, tables, or customers were preferable to the banquet server, who knew they could make a higher income based on such factors.

23. In or around 2003, Defendants hired Supervisor HAGGAG to be as Supervisor of banquet servers.

24. At all times material, Supervisor HAGGAG was and is the Supervisor of banquet servers at Defendant's   hotel and Plaintiff's immediate supervisor.

25. At all material times, Supervisor HAGGAG is an Egyptian man and practices Islam as his religion.

26. Shortly after being hired by Defendants, Supervisor HAGGAG began to discriminate against Plaintiff CHAUHAN on the basis of his religion, race, and national origin.

27. By way of example, Supervisor HAGGAG would show preference in lucrative job assignments to banquet servers that were Muslim or from Pakistan—such as ASMAT ALI, MOHAMADUDDIN, YONNUS, and MIAS MOHAMAD make offensive comments about Indians or the Hindu religion.

28. Supervisor HAGGAG's discriminatory conduct was especially relevant because nationality and religion between Hindus from India and Muslims from other nations—especially in India's neighboring Pakistan—is a subject of major conflict.

29. This conflict essentially originated around the "Partition of India," when British India was divided in 1947, creating two independent territories, India and Pakistan. This partition displaced over 14 million people along religious lines, created refugee crises, and sparked large-scale violence and loss of life. It was this major event the created an atmosphere of hostility and suspicion between India and Pakistan that plagues their relationship to the

4

present.

30. Today in India, Hinduism is the largest religion in the nation, with 79.8% of the population identifying themselves as Hindus.

31. Meanwhile, modern Pakistan is a democratic parliamentary federal republic, with Islam as the state religion.

32. In or around October 2003, Plaintiff asked Supervisor HAGGAG if he could have three days off to participate in certain religious funeral rituals. Supervisor HAGGAG responded to Plaintiff's request by stating, "**CAN YOU POSTPONE THE DATE?**"

33. As the years progressed, Supervisor HAGGAG continued to discriminate against Plaintiff CHAUHAN by ignoring his religious practices and making insulting comments about his Hindu religion, as well as offensive comments about Indians—who predominately practice Hinduism.

34. On or about April 15, 2015, Supervisor HAGGAG informed Plaintiff CHAUHAN that he had to work an event for over 100 people on April 16, 2015. In response, Plaintiff informed him that his mother-in-law was in hospice and could pass away at any moment and he needed to assist his family that day.

35. On or about April 16, 2015, Supervisor HAGGAG forced Plaintiff CHAUHAN to work although he had asked for leave time under the Family Medical Leave Act, which he was rightfully entitled to as a full-time employee.

36. Plaintiff CHAUHAN made an initial complaint to Defendant's Director of Human Resources, ANN BONET (hereinafter referred to as "BONET"), regarding Supervisor HAGGAG's discriminatory religious comments and behavior.

37. At all times material, Defendants took no action against Supervisor HAGGAG to remedy the

discrimination against Plaintiff CHAUHAN.

38. Supervisor HAGGAG regularly made discriminatory comments about Indian people   and Hindus within earshot of Plaintiff CHAUHAN.

39. By way of example, Supervisor HAGGAG would say:

- "**WHAT ARE THESE DIRTY ANIMALS DOING HERE?**" when referring to Hindu gods that are represented by certain animals—like the Hindu god Ganesha.
- "**WHAT IS THIS? … THE FIRE DEPARTMENT WILL COME!**" when referring to a Hindu religious ceremony involving fire.
- "**WHY ARE THESE WHITE PEOPLE WEARING THESE INDIAN DRESSES. THEY ARE LIKE THE JEWS MAKING PEOPLE FOLLOW THEM.**"
- "**INDIANS ARE BULLIES**."
- "**THEY ARE KILLING PAKISTANIS**," referring to Indian's allegedly killing people from Pakistani.

40. Plaintiff routinely heard discriminatory comments, such as those listed above, throughout his employment with Defendants and such offensive remarks were especially common during events related to Hindu religion or events that included a large Indian or Pakistani population.

41. Supervisor HAGGAG continued to deny Plaintiff CHAUHAN leave time when requested. However, he would easily grant Muslim and Pakistani banquet servers the leave time they requested. Supervisor HAGGAG continued to discriminate against Plaintiff CHAUHAN by denying Plaintiff the ability to work extra hours while giving additional hours and shifts to the Muslim and Pakistani banquet servers.

42. Moreover, Defendants continued to discriminate against Plaintiff CHAUHAN by never issuing Plaintiff a raise in his 17 years of working with Defendants, while giving raises to less qualified banquet servers that were Muslim and Pakistani.

43. At all material times, Plaintiff would make routine complaints to Supervisor HAGGAG and Defendant's   Human Resources personal about the discriminatory comments and preferential treatment afforded to Muslim and Pakistani banquet servers.

6

44. All material times, Plaintiff would make routine complaints to Defendant's Human Resources about the fact he was not given a raise and other non-Hundi and non-Indian banquet servers were given increases.

45. At all material times, Supervisor HAGGAG and Defendant's   Human Resources personal ignored Plaintiff's complaints and allowed the unlawful treatment to continue.

46. In or around October 2017, Plaintiff asked another one of Defendant's   banquet server supervisors, SONNY BISHOP (hereinafter referred to as "BISHOP"), if he could leave work early to care for his sick son. Supervisor BISHOP granted Plaintiff CHAUHAN his request to leave early.

47. Upon returning to work, Supervisor HAGGAG humiliated Plaintiff CHAUHAN by telling his co-workers that he left early to protest someone else receiving a promotion over him.

48. On or about October 7, 2017, Supervisor HAGGAG denied Plaintiff CHAUHAN's request for three days off to celebrate his son's birthday.

49. After having his request denied by Supervisor HAGGAG, Plaintiff CHAUHAN arrived at work on each of the three days that he requested off.

50. On or about October 17, 2017, Supervisor HAGGAG sent Plaintiff CHAUHAN home, after denying his request to be off that day, because he "had no assignment" for Plaintiff CHAUHAN.

51. At all times material, Supervisor HAGGAG's discriminatory conduct was done with the purpose of humiliating, degrading and embarrassing Plaintiff CHAUHAN.

52. On or about October 30, 2017, Plaintiff CHAUHAN filed an initial Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants and Supervisor HAGGAG had discriminated against him on the basis of his religion, race, national origin,

disability, together with a hostile work environment and retaliation.

53. On or about October 30, 2017, Plaintiff CHAUHAN sent an email to Defendant's   Director of Human Resources, BONET, stating that although he complained about Supervisor HAGGAG's discrimination against him in 2015, nothing had been done and the discrimination had continued to worsen over the years.

54. Plaintiff stated in the email that because Supervisor HAGGAG always denies his requests for family and medical leave, he neglected to even ask for Bereavement time off when his mother passed in May of 2015.

55. After Plaintiff CHAUHAN complained about Supervisor HAGGAG's discriminatory comments and conduct to Human Resources, Defendant's  work environment became increasingly hostile as Supervisor HAGGAG began to retaliate against Plaintiff CHAUHAN.

56. Shortly after the complaints were made to Human Resources, Supervisor HAGGAG stopped Plaintiff CHAUHAN from working any evening shifts, forcing Plaintiff to work morning shifts starting around 6:00 AM that only lasted for one hour.

57. Prior to the complaints made to Defendant's   Human Resources,  Supervisor  HAGGAG allowed Plaintiff CHAUHAN to work what is understood between Defendants employees as "good tables" where there are opportunities for large tips.

58. Supervisor HAGGAG continued to discriminate against Plaintiff CHAUHAN by not allowing him to work profitable evening shifts where he would stand to receive larger tips. Supervisor HAGGAG continued to show preferential to fellow Muslim and Pakistani banquet servers and would not give any evening shifts to Plaintiff because he is Indian and practices Hinduism.

59. Plaintiff CHAUHAN continued to complain to Human Resources Director BONET, sending

yet another email on or about November 18, 2017 Supervisor HAGGAG's discriminatory and retaliatory conduct.

60. At all material times, despite Plaintiff CHAUHAN's constant complaints about Supervisor HAGGAG's discrimination and retaliation against him, no action was taken by Human Resources to remedy the matter.

61. On or about December 12, 2017, intending to humiliate Plaintiff CHAUHAN, Supervisor HAGGAG began throwing food and condiments on the ground in the section that Plaintiff CHAUHAN had been assigned for the day in front of other banquet servers and guests.

62. On or about December 13, 2017, Plaintiff CHAUHAN emailed Director BONET from Human Resources again regarding the discrimination and retaliation that he was experiencing. BONET never responded to Plaintiff's email.

63. In or around January, 2018, Plaintiff CHAUHAN sent a letter to EEOC Investigator DOLANDA YOUNG (hereinafter referred to as "YOUNG"). In the letter, Plaintiff CHAUHAN alleged that despite making multiple complaints, nothing had been done by Human Resources to remedy the matter.

64. On or about January 18, 2018, Defendants intentionally retaliated against Plaintiff by forcing him to work an event that included over 100 people with help from only one other person.

65. Working this event with such little help caused Plaintiff CHAUHAN's blood sugar to raise to 308 — which is a dangerous level — as well as stress and physical strain.

66. Plaintiff CHAUHAN complained to Defendants about his diabetic needs, and the change in duties and about the fact Supervisor HAGGAG was making his work more difficult.

67. Around this time, Plaintiff CHAUHAN also informed Investigator YOUNG of the above

incident regarding his diabetics scare.

68. At all material times, despite Plaintiff CHAUHAN's complaints about his diabetes, no action was taken by Human Resources to remedy the matter.

69. On or around January 25, 2018, Plaintiff CHAUHAN sent another email to Human Resources Director BONET, alleging that although he had been approved to take two weeks earlier off, Supervisor HAGGAG continued to call and harass him stating "**YOU WERE SUPPOSED TO WORK TODAY, ARE YOU ON THE WAY?**

70. Supervisor HAGGAG stated the above ignoring Plaintiff's approved time off because he wanted to tarnish Plaintiff's performance record as an employee and terminate Plaintiff.

71. On or about January 2018, Defendants began limiting Plaintiff CHAUHAN's shifts to mostly early morning coffee duties at 6:30 AM, that paid less than evening shifts or working as a server at events.

72. Soon after learning his work schedule was reduced times that paid less, Plaintiff CHAUHAN complained to Defendants about the material change in his hours.

73. On or around March 13, 2018, Director BONET asked if Supervisor HAGGAG requested that.

74. Plaintiff trim his hair and, "**CAN YOU TRIM YOUR HAIR?**"

75. Seemingly, Director BONET was referring to Plaintiff's sideburns.

76. At all times, Plaintiff was clean-shaven—with no long mustache or beard—and kept his hair in a neat and hygienic men's fashion.

77. As this was the first time Plaintiff was asked to change his hair, he was shocked by the question. Plaintiff responded, "No. It is a matter of religion."   Director BONET then said, "Thank you," and left Plaintiff to continue working.

78. At all material times, as a matter of Plaintiff's religious practices, he does not trim his hair because of his deceased parents and he must continue to perform rituals showing symbolic offerings and gratitude to his parents.

79. Later that work day, Defendants continued to pressure Plaintiff to trim his hair. By way of example, Director BONET became frustrated and kept repeating, "**I WANT YOU TO TRIM YOUR HAIR**." Plaintiff continued to refuse on grounds of his religious beliefs.

80. At the end of the work day, Director BONET and Supervisor HAGGAG informed Plaintiff to not come back to work unless he trimmed his hair.

81. On or around March 26, 2018, Plaintiff sent a written complaint via email to Director BONET. Plaintiff complained how Director BONNET and Supervisor HAGGAG threatened to refuse to schedule him for work unless he trimmed his hair. Again Plaintiff explained that trimming his hair in the requested fashion was against his religious beliefs.

82. On or around March 30, 2018, Director BONNET informed Plaintiff to not return to work unless he brought a note from a priest about his religious practices.

83. On or around April 4, 2018, Plaintiff produced to Director BONNET a letter from his Priest, KRISHNA DIXIT (hereinafter referred to as "DIXIT"), Head Priest at the Hindu Center House of Worship in Flushing.

84. Priest DIXIT's letter stated in part, "True Hinduism beliefs. Man and women can grow Hairs Facial and Head for some time for the Purpose of Material Sacrifice to Lord Vishnu according to the promise (Mannat) made by the person."

85. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff to on an ongoing and continuous basis.

86. Defendants discriminated against Plaintiff because of his race, national origin, and disability and pregnancy status, and because he complained or opposed the unlawful conduct of Defendants related to the above protected classes.

87. At all material times, Respondents failed to discuss or make reasonable adjustments to the work environment that would allow a Plaintiff to practice his religious beliefs.

88. At all material times, allowing Plaintiff to work with or without an accommodation would not cause an undue hardship on Defendant's operation of its business.

89. At all material times, Respondents failed to engage in an interactive process of discussing

90. Plaintiff's requested accommodations and Plaintiff's religious observances.

91. At all material times, Respondents failed to discuss or make reasonable adjustments to the work environment that would allow a Plaintiff's disability of diabetes.

92. At all material times, allowing Plaintiff to work with or without an accommodation to his disability would not cause an undue hardship on Defendant's operation of its business.

93. At all material times, Respondents failed to engage in an interactive process of discussing

94. Plaintiff's requested accommodations and Plaintiff's disability of diabetes.

95. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

96. As a result of Defendants' discriminatory and intolerable treatment, Clamant suffered and continues to suffer severe emotional distress and physical ailments.

97. As a result of the acts and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other pecuniary losses.

98. As Defendant conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all Respondents jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (Against Defendant MM HOTEL)

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100.    Plaintiff claims Defendant MM HOTEL violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

101.    SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

102.    Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

103.    Defendant MM HOTEL violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his associated disability.

104.    Defendant MM HOTEL violated the above and Plaintiff suffered numerous damages as

a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
### (Against Defendant MM HOTEL)

105.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

106.    SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate

against any individual because such individual has opposed any act or practice made

unlawful by this chapter or because such individual made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this chapter.

107.    Defendant MM HOTEL violated the above and Plaintiff suffered numerous damages as

a result.

## AS A THIRD CAUSE OF ACTION
## FOR VIOLATIONS OF THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
### (Against Defendant MM HOTEL)

108.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

109.    Section 2612 (a)(1) Entitlement to Leave of the Family Medical Leave Act (FMLA)

states in pertinent part:

> Subject to section 2613 of this title, an eligible employee shall be entitled to a total of
> 12 workweeks of leave during any 12-month period for one or more of the following:
>
> (A) Because of the birth of a son or daughter of the employee and in order to care for
> such son or daughter.

14

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

110.    Defendants MM HOTEL violated the above and Plaintiff suffered numerous damages as

a result.


### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION AND INTERFERENCE UNDER THE
### FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
### (Against Defendant MM HOTEL)

111.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint as if the same were set forth herein fully at length.

112.    Section 2615 of the FMLA states as follows:

Prohibited acts

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

113. Defendant MM HOTEL unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise his rights under the above section and discriminated and retaliated against Plaintiff for opposing Defendant's unlawful employment practice and attempting to exercise his rights.

114. Defendant MM HOTEL violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**42 U.S.C. SECTION 1981**
**(Against All Defendants)**

115. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116. 42 U.S.C.A. Section 1981 states in relevant part as follows:

> "Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981.

117. Defendants discriminated against Plaintiff, as a member of the African American race, in violation of the rights afforded to him by 42 U.S.C. §1981.

118. By the conduct described above, Defendants intentionally deprived Plaintiff of the same rights as are enjoyed by white citizens, to the creation, performance, enjoyment, and all benefits and privileges of his contractual relationship with Defendants, in violation of 42

U.S.C. §1981.

119. As a result of Defendants' discrimination in violation of Section 1981, as a member of the African American race, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of his contractual relationship, which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

120. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

121. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### TITLE VII
**(Against Defendant MM HOTEL)**

122. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

123. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

124. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of his race, together with causing a hostile work environment based on the same.

125. Defendant MM HOTEL violated the above and Plaintiff suffered numerous damages as a result.

### AS A SEVENTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### TITLE VII
**(Against Defendant MM HOTEL)**

126. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

127. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or

participated in any manner in an investigation, proceeding, or hearing under this subchapter."

128. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

129. Defendant MM HOTEL violated the above and Plaintiffs suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

130. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

131. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

132. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race, harassing Plaintiff, and causing a hostile work environment.

133. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

134. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**<u>NEW YORK STATE LAW</u>**
**(Against All Defendants)**

135. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

136. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

137. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff.

138. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**<u>NEW YORK STATE LAW</u>**
**(Against All Defendants)**

139. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

140. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

141. Defendants engaged in an unlawful discriminatory practice by discriminating against the

Plaintiff because of his associated disability, harassing Plaintiff because of his associated disability, and causing a hostile work environment.

142. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

143. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**<u>NEW YORK STATE LAW</u>**
**(Against All Defendants)**

144. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

145. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

146. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff.

147. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TWELFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**<u>NEW YORK STATE LAW</u>**
**(Against All Defendants)**

148. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

149. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

150. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

151. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:   New York, New York
             July 18, 2018

                                              DEREK SMITH LAW GROUP, PLLC
                                              Attorneys for Plaintiff


                                              ____/S/_____
                                              Kelly O'Connell, Esq.
                                              One Penn Plaza, Suite 4905
                                              New York, New York 10119
                                              (305) 946-1884